IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

**LEO FRANCIS DOW, III,**

    **Plaintiff,**

v.                                                              **Case No:** 7:20CV593

                                                              **JURY TRIAL DEMAND**

**GENERAL ELECTRIC COMPANY,**

    **Serve:**
    **Henry Lawrence Culp, Jr.**
    **CEO**
    **General Electric Headquarters**
    **5 Necco Street**
    **Boston, MA 02210**

    **Defendant.**

## COMPLAINT

COMES NOW, Plaintiff Leo Francis Dow, III (hereinafter, "Mr. Dow" or "Plaintiff"), by counsel, and states as his Complaint against Defendant General Electric Company (hereinafter, "GE" or "Defendant") the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2. Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise, occurred in the City of Salem, Virginia, which is located within the Western District of Virginia, Roanoke Division. *See* 28 U.S.C. § 1391(b)(2).

3. Due to its contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around November 19, 2019.  Plaintiff received a Dismissal and Notice of Rights from the EEOC dated August 20, 2020, attached hereto as **EXHIBIT A**.  Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

5. Mr. Dow, a resident of Roanoke, Virginia, was hired by GE on or about June 10, 1996, and worked on a consistent, full-time basis for GE for nearly 23 years until his termination from employment which occurred on or around June 1, 2019.

6. GE is an American multinational conglomerate corporation that, at all times relevant to the Complaint, maintained a manufacturing plant in Salem, Virginia.

## III. FACTUAL ALLEGATIONS

7. At the time of his termination from GE, Mr. Dow worked in the Manufacturing and Testing Department of GE's Salem, Virginia facility.

8. During his employment, Mr. Dow's work performance met or exceeded GE's expectations of him. Indeed, Mr. Dow worked many overtime hours for GE — earning significant additional compensation — while continuing to maintain his excellent work performance.

9. Unfortunately, in January of 2018, Mr. Dow fell down a set of stairs while at home.

10. Mr. Dow's fall resulted in multiple fractured bones and permanent orthopedic injuries, led to several months of related treatment and recovery, and caused

Mr. Dow to suffer from ADA-recognized disabilities that, at all times relevant, impaired several of Mr. Dow's daily life activities and/or functions.

11. Accordingly, shortly after suffering his fall, Mr. Dow engaged in the protected conduct of requesting and taking short-term and long-term disability leave from his position with GE to facilitate his recovery.

12. Of note, at no time during his recovery did Mr. Dow's physician indicate to Mr. Dow that he would require surgery in order to return to work.

13. On or about February 6, 2019, Mr. Dow received a letter from GE indicating that he would be terminated from employment on February 8, 2019, unless he could provide documentation showing he could return to work.

14. Although Mr. Dow's disabilities affected his daily life activities — including standing, walking, and talking — he had substantially recovered from his injuries by this time and, once released by his health care provider, could perform the essential functions of his position with or without an accommodation for his disabilities.

15. Shortly after receiving the February of 2019 letter from GE, Mr. Dow spoke with GE Employee Human Resources Manager Rachel Barrows about returning to work.

16. Ms. Barrows informed Mr. Dow that to return to his position with GE, he needed to submit documentation from his health care provider stating that he could return to work without restrictions.

17. Accordingly, Mr. Dow promptly acquired and submitted notes from two separate health care providers stating that he could return to work without restrictions. *See* February 7, 2019 note from Lewis-Gale Valley View Family Practice ( "Leo Dow III was seen for an appointment on 02/07/2019 . . . May return to . . . [w]ork on 02/08/2019 with no restrictions[.]"), attached hereto as **EXHIBIT B**; February 15, 2019 note from

Carilion Clinic Orthopedics ("This is to certify that Leo Francis Dow III was seen in my clinic on 2/15/2019. He may return to work/school on 2/15/19 with [f]ull duty, [n]o restrictions."), attached hereto as **EXHIBIT C**.

18. The February 15, 2019 note was signed thusly

*M. Reynolds, RN*
Megann R Reynolds, RN
per
Jesse B Seamon, MD

19. Dr. Jesse Seamon was Mr. Dow's orthopedic physician and the health care provider who had originally indicated to GE that Mr. Dow was able to work. Upon information and belief, Megann R. Reynolds, RN, had full authority to endorse the February 15, 2019 note on behalf of Dr. Seamon.

20. After tendering these notes to GE, GE should have allowed Mr. Dow to return to work.

21. Although Mr. Dow satisfied the requirements proposed by his employer, GE, without legitimate reason, was incredibly resistant to Mr. Dow's requests to return to work, failed to appropriately acknowledge or respond to Mr. Dow's return to work requests, and refused to allow him to resume his position with GE.

22. Specifically, subsequent to receiving Mr. Dow's health care provider notes clearing him to return to full duty work in February of 2019, a GE Human Resources representative informed Mr. Dow that he could not return to work unless he submitted additional documentation, including numerous and duplicative medical records and

evaluations from multiple health care providers. On March 8, 2019, a GE Human Resources representative sent Mr. Dow a text message indicating that, despite being provided with medical documentation from multiple health care providers indicating that Mr. Dow could return to work without restrictions, GE still wished to receive more information from Mr. Dow's health care provider.

23. Mr. Dow was bewildered as to why GE would not allow him to return to work. He responded to the Human Resources representative via text, "I feel like I should be able to come back to work now since you have the doctor's permission with no restrictions."

24. The Human Resources representative responded via text stating that the "medical department has follow up questions we need to have answered first."

25. On March 14, 2019, the same Human Resources representative texted Mr. Dow indicating that he required a needless "reassessment appointment" from a health care provider.

26. Despite the numerous unnecessary roadblocks that GE manufactured to prevent Mr. Dow from returning to work, he consistently followed GE's unlawful requests and directives.

27. Mr. Dow continued to comply with GE's demands to the best of his ability and, as requested, submitted additional documentation to GE stating that he could return to work. *See, e.g.,* April 15, 2019 note from Carilion Clinic Orthopedics ("The patient is able to return to full work duty without restriction with ability to perform his job duties further confirmed by recent independent functional capacity evaluation. Able to return to full duty effective 4/16/19."), attached hereto as **EXHIBIT D.**

28. Accordingly, each document and assessment Mr. Dow produced to GE from February of 2019 until April of 2019 underscored a singular conclusion – Mr. Dow was fully capable of performing the tasks his position required of him and could safely return to work without restrictions.

29. Nevertheless, GE refused to allow Mr. Dow to return to work.

30. Upon information and belief, GE subjected Mr. Dow to these unnecessary and burdensome requirements because GE held a discriminatory and retaliatory animus against Mr. Dow due to his injury-related disabilities and related need for leave. This animus resulted in months of lost shifts and opportunities for overtime compensation for Mr. Dow, and, ultimately, Mr. Dow's termination from employment.

31. Indeed, Mr. Dow received a letter from Ms. Barrows on May 1, 2019 stating that his last working day of employment would be May 3, 2019 and terminating his employment on or about June 1, 2019.

32. At no time did GE ever possess any evidence to support the contention that if Mr. Dow returned to work, he would pose a danger to himself or others.

33. Upon information and belief, GE's conduct towards Mr. Dow was discriminatory, intentional, and retaliatory, as Mr. Dow complied with GE's return-to-work requirements as early as February 7, 2019, and no business-related legitimate reason justified the actions GE took against him.

34. Accordingly, GE would not have prevented Mr. Dow's return to work, or taken other discriminatory and retaliatory actions against him, but for his disabilities and related need for accommodations with regard to leave and attendance.

35. Instead, GE's refusal to permit Mr. Dow to return to work was merely a pretext to unlawful disability-related discrimination and retaliation by GE, as GE's

6

conduct occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon Mr. Dow's disabilities.

36. Mr. Dow, a qualified individual with ADA-recognized disabilities, suffered an adverse employment action, in violation of the ADA, because GE discriminated and/or retaliated against him because of his disabilities and engagement in protected conduct, and failed to properly accommodate these disabilities.

37. Because the actions taken by Mr. Dow's supervisory employees were taken within the scope of their employment, GE is responsible for their actions based upon the doctrine of *respondeat superior.*

## COUNT I: CLAIM FOR DISCRIMINATION IN VIOLATION OF THE ADA

38. Mr. Dow incorporates herein by reference the preceding paragraphs of this Complaint.

39. At all times relevant to this Complaint, Mr. Dow was a qualified individual with a disability, pursuant to the ADA.

40. Specifically, and at all times relevant, Mr. Dow suffered from ADA-recognized disabilities stemming from a January of 2018 fall that impaired several of Mr. Dow's daily life and work activities.

41. In the alternative, Mr. Dow was regarded by GE as having such impairments.

42. At all times relevant, however, Mr. Dow could perform the essential functions of his position with GE with or without an accommodation.

43. Mr. Dow revealed his disabilities to his supervisors at GE and engaged in the protected conduct of requesting reasonable accommodations, including disability leave, to recover from his injuries, and treat and manage his disabilities.

44. During Mr. Dow's disability leave, GE threatened to terminate his employment unless he could provide return-to-work documentation.

45. On multiple occasions, and as early as February 7, 2019, Mr. Dow complied with GE's directive, and produced valid and appropriate documentation stating that he could safely return to work without restrictions.

46. However, GE, without legitimate reason, refused to permit Mr. Dow to return to work, and instead terminated Mr. Dow's employment.

47. Prior to his requests to return to work, Mr. Dow was performing his work at a satisfactory level and meeting or exceeding GE's legitimate business expectations.

48. GE discriminated against Mr. Dow by subjecting him to unreasonable and burdensome return-to-work requirements due to his disabilities and related need for accommodations with regard to leave and attendance, failing to appropriately respond to — and also denying — Mr. Dow's return-to-work requests, and treating Mr. Dow differently, and less preferably than similarly situated non-disabled employees, ultimately resulting in Mr. Dow's termination from employment.

49. GE would not have delayed and/or denied Mr. Dow's return-to-work requests, nor taken the other discriminatory actions against him, but for Mr. Dow's disabilities and/or requests for reasonable accommodations, including his requests related to leave and attendance.

50. Any reasons given by GE for its treatment of Mr. Dow were pretextual, as Mr. Dow's work performance met his employer's legitimate expectations.

51. GE's refusal to permit Mr. Dow to return to work and Mr. Dow's subsequent termination occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon Mr. Dow's disabilities and/or requests for accommodations.

52. As a direct and proximate result of GE's actions, Mr. Dow has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

53. At all times material hereto, GE engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Dow so as to support an award of punitive damages.

54. The above-described acts by GE and employees of GE constitute disability discrimination in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT II: CLAIM FOR FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

55. Mr. Dow incorporates herein by reference the preceding paragraphs of this Complaint.

56. At all times relevant to this Complaint, Mr. Dow was a qualified individual with a disability, pursuant to the ADA.

57. Specifically, and at all times relevant, Mr. Dow suffered from ADA-recognized disabilities stemming from a January of 2018 fall that impaired several of Mr. Dow's daily life and work activities.

58. In the alternative, Mr. Dow was regarded by GE as having such impairments.

59. At all times relevant, however, Mr. Dow could perform the essential functions of his position with GE with or without an accommodation.

60. Prior to his requests to return to work, Mr. Dow was performing his work at a satisfactory level and meeting or exceeding the legitimate business expectations of GE.

61. Mr. Dow revealed his disabilities to his supervisors at GE, and requested reasonable accommodations, including temporary disability leave, to recover from his injuries, and treat and manage his disabilities.

62. During Mr. Dow's leave, GE threatened to terminate his employment unless Mr. Dow could provide documentation showing he could return to work.

63. On multiple occasions, and as early as February 7, 2019, Mr. Dow complied with GE's directive, and produced valid and appropriate documentation stating that he could safely return to work without restrictions.

64. However, GE, without legitimate reason, refused to permit Mr. Dow to return to work, and instead terminated Mr. Dow's employment.

65. GE failed to properly accommodate Mr. Dow's disabilities by subjecting him to unreasonable and burdensome return-to-work requirements due to his disabilities and related need for accommodations with regard to leave and attendance, failing to appropriately respond to – and also denying – Mr. Dow's return-to-work requests, and treating Mr. Dow differently, and less preferably than similarly situated non-disabled employees, ultimately resulting in Mr. Dow's termination from employment.

66. GE would not have delayed and/or denied Mr. Dow's return-to-work requests, nor taken the other discriminatory and retaliatory actions against him, but for Mr. Dow's disabilities and/or requests for reasonable accommodations, including his requests related to leave and attendance.

67. GE's refusal to permit Mr. Dow to return to work and Mr. Dow's subsequent termination occurred under circumstances that raise a reasonable inference of unlawful failure to accommodate based upon Mr. Dow's disabilities and/or requests for accommodations.

68. Any reasons given by GE for its treatment of Mr. Dow were pretextual, as Mr. Dow's work performance met his employer's legitimate expectations.

69. As a direct and proximate result of GE's actions, Mr. Dow has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

70. At all times material hereto, GE engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Dow so as to support an award of punitive damages.

71. The above-described acts by GE and employees of GE constitute failure to accommodate in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT III: RETALIATION IN VIOLATION OF THE ADA

72. Mr. Dow incorporates herein by reference the preceding paragraphs of this Complaint.

73. At all times relevant to this Complaint, Mr. Dow was a qualified individual with a disability, pursuant to the ADA.

74. Specifically, and at all times relevant, Mr. Dow suffered from ADA-recognized disabilities stemming from a January of 2018 fall that impaired several of Mr. Dow's daily life and work activities.

75. In the alternative, Mr. Dow was regarded by GE as having such impairments.

76. At all times relevant, however, Mr. Dow could perform the essential functions of his position with GE with or without an accommodation.

77. Mr. Dow revealed his disabilities to his supervisors at GE and engaged in the protected conduct of requesting reasonable accommodations, including disability leave, to recover from his injuries, and treat and manage his disabilities.

78. During Mr. Dow's disability leave, GE threatened to terminate his employment unless he could provide return-to-work documentation.

79. On multiple occasions, and as early as February 7, 2019, Mr. Dow complied with GE's directive, and produced valid and appropriate documentation stating that he could safely return to work without restrictions.

80. However, GE, without legitimate reason, refused to permit Mr. Dow to return to work, and instead terminated Mr. Dow's employment in an act of retaliation.

81. Prior to his requests to return to work, Mr. Dow was performing his work at a satisfactory level and meeting or exceeding GE's legitimate business expectations.

82. GE retaliated against Mr. Dow by subjecting him to unreasonable and burdensome return-to-work requirements due to his disabilities and related need for accommodations with regard to leave and attendance, failing to appropriately respond to – and also denying – Mr. Dow's return-to-work requests, and treating Mr. Dow differently, and less preferably than similarly situated non-disabled employees, ultimately resulting in Mr. Dow's termination from employment.

83. GE would not have delayed and/or denied Mr. Dow's return-to-work requests, nor taken the other retaliatory actions against him, but for Mr. Dow's disabilities

and/or requests for reasonable accommodations, including his requests related to leave and attendance.

84. Any reasons given by GE for its treatment of Mr. Dow were pretextual, as Mr. Dow's work performance met his employer's legitimate expectations.

85. GE's refusal to permit Mr. Dow to return to work and Mr. Dow's subsequent termination occurred under circumstances that raise a reasonable inference of unlawful retaliation based upon Mr. Dow's disabilities and/or requests for accommodations.

86. As a direct and proximate result of GE's actions, Mr. Dow has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

87. At all times material hereto, GE engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Dow so as to support an award of punitive damages.

88. The above-described acts by GE and employees of GE constitute disability retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT III: CLAIM FOR INTERFERENCE IN VIOLATION OF THE ADA

89. Mr. Dow incorporates herein by reference the preceding paragraphs of this Complaint.

90. At all times relevant to this Complaint, Mr. Dow was a qualified individual with disabilities, pursuant to the ADA.

91. Specifically, and at all times relevant, Mr. Dow suffered from permanent orthopedic injuries which gave rise to disabilities which impaired several of Mr. Dow's

13

daily life activities and/or functions including standing, eating, and standing for an extended period of time.

92. In the alternative, Mr. Dow was regarded by GE as having such impairments.

93. At all times relevant, however, Mr. Dow could perform the essential functions of his job with or without an accommodation.

94. Mr. Dow revealed his disabilities/serious health conditions to his supervisors and the Human Resources department at GE and requested the to return to work.

95. GE interfered with Mr. Dow's ADA rights by refusing to appropriately engage in a dialogue with him in a good faith basis regarding his return to work and treating Mr. Dow differently, and less favorably than similarly situated employees.

96. GE would not have refused Mr. Dow's return to work but for his disabilities or being regarded as disabled by GE.

97. Mr. Dow's constructive termination from employment occurred under circumstances that raise a reasonable inference of unlawful interference based upon his disabilities.

98. As a direct and proximate result of GE's actions, Mr. Dow has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

99. At all times material hereto, GE engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Dow so as to support an award of punitive damages.

100. The above-described acts by GE and employees of GE constitute interference in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, specifically 42 U.S.C. § 12203(b), and the ADA Amendments Act of 2008 ("ADA").

WHEREFORE, Plaintiff Leo Francis Dow, III, prays for judgment against Defendant General Electric Company, and for equitable relief, compensatory and punitive damages, together with prejudgment interest from February 8, 2019, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

    Respectfully Submitted,

    **LEO FRANCIS DOW, III**

    /s/ Thomas E. Strelka_____
    Thomas E. Strelka, Esq. (VSB# 75488)
    L. Leigh R. Strelka, Esq. (VSB # 73355)
    N. Winston West, IV, Esq. (VSB #92598)
    Brittany M. Haddox, Esq. (VSB # 86416)
    Monica L. Mroz, Esq. (VSB #65766)
    STRELKA EMPLOYMENT LAW
    Warehouse Row
    119 Norfolk Avenue, S.W., Suite 330
    Roanoke, VA  24011
    Tel:  540-283-0802
    thomas@strelkalaw.com
    leigh@strelkalaw.com
    winston@strelkalaw.com
    brittany@strelkalaw.com
    monica@strelkalaw.com

    *Counsel for Plaintiff*